My name is Tenorio Moises de Alvarez, counsel for Appellant Gloria C. Perez, Brandon de Council, please come forward, identify yourself. Yes, Your Honor. Good morning. Moises Alvarez on behalf of Maria Perez, the appellant. Please proceed. Okay. You have 15 minutes. You may reserve some time for rebuttal. Yes, Your Honor. How much time would you like to reserve? Five minutes. Would you like to reserve about five minutes? Yes. Okay. I'll tell you when five minutes is left. Please proceed. Okay. Yes, Your Honor. I would request the court to the judgment for summary judgment of Maria Perez was that the court denied the summary judgment. So I request that the court reverse the summary judgment on her. I think that we gave a lot of evidence that this question of fact whether the debtor was insolvent. There were questions of fact whether the debtor intended to defraud creditors. And then there were questions of fact whether the transfer fraudulent. And I'll start with that part, Your Honor. This was not a business transaction. These people were not business people. The debtor was a woman, Isabella Tenorio, was a woman that was working in the industry of taking care of other people. Isabella Perez was in the industry doing taxes. And Carmen Aguayo was in the industry of beauty salons. A question on this case is that Mount View property, the first purchase of the property was Carmen Aguayo. She purchased the property. In 2010, she transferred the property to the debtor, but it was not recorded until 2014. At the time of the transfer, Carmen Aguayo still lived in the property. Carmen Aguayo was paying the mortgage, even though the loan was in the name of the debtor. In 2014, when they recorded it, Isabella didn't want to be in the Tenorio Charter. So Carmen Aguayo decided to transfer the grantee to Maria Perez. But in other times, the owner of the property constructively was Carmen Aguayo. And she made all the payments throughout this thing. And then the problem with this issue is that when the debtor went to do a bankruptcy, the attorney didn't, the petition was not right. There was a lot of- Let me stop you for a minute. You said that throughout, Ms. Aguayo was the constructive owner of the property. Yes. Is there evidence in the record to show that? Yes, Your Honor, in all the declarations of her, yeah. Ms. Aguayo's declaration? Yes, yes. I didn't see any place a declaration from the debtor, Ms. Tenorio. Did I miss something, or is there a Tenorio declaration? I don't think so. Only Maria Perez and Carmen Aguayo, yeah. Okay. Yeah. So when Isabella went to her attorney, and this is the attorney didn't do a right thing with that petition. Because when she came to me in 2014, Carmen Aguayo, there had been a lot of problems with the petition. The attorney never went to the 341 meetings. The attorney didn't prepare for the position. And when I read the petition, it was a mess, really. And I told- Did that really end up making a difference in the end? I mean, wasn't-well, with one exception, wasn't the bankruptcy court able to figure out what actually happened? The exception is he thought there was a property in Maryland and a mortgage on Maryland property. I think that was wrong. Yeah. But that's, I don't think, really ends up mattering. Exactly. Despite the problems with the petition, the bankruptcy judge was able to figure out the facts, what actually happened, right? I mean- I mean, he did. I mean, but the thing is that the trust was not-there were questions of whether they were fraud or not. I don't think that Carmen Aguayo did any fraud. Isabella either, or Maria Perez. There was a lawsuit filed against Adair of Wells Fargo. She filed a petition, and she didn't-she just wanted to get her financial things done correctly. Also, can I interrupt you a little bit? Yes. When I was a young attorney, people moved for summary judgments, and we put in affidavits and say, well, none of that's true. And so we would defeat summary judgments by kind of just denials. And then as that law evolved, particularly in federal court, the court said, well, it isn't sufficient just to come up and say, well, I don't accept any of that is true. I deny all of that. You have to come forward in response to a satisfactory case. You have to come forward with factual allegations that show that these issues are at-material issues are at issue in the case. And I think this is what my colleague is asking you about, which is can you tell us in the record where you put in evidence, an affidavit or a certificate that puts a material issue in dispute in this case, where you say, well, here's the evidence I put on insolvency, and therefore there's an issue about insolvency or other material elements of this claim. So the first thing is that the trustee never put evidence about the debtor's payment history of debts, how much the payments were, when they were due, when they were being paid, and how long. The trustee never put an appraisal of the property. The debtor came, paid the mortgage. There was no balance sheets put in the evidence as to the appraisal issue because the debtor was not in business. And she was a low-level income person dealing only with the daily financial issues. And there was questions of fact where the debtor was solving or not at the time of the transfer. Well, the transfer was done in 2010. And at that time, she didn't file the bankruptcy, I think, in 2015. Well, that comes to the data, the effective date of the transfer. I think the bankruptcy judge ruled it was the date of recording, which was a couple of years later. So it was in 40, correct, correct, correct. So the issue of her being insolvent, we argue that she, even though her debts and her income, she was able to pay them. And I think the petition shows that. She had the money to pay her debts and everything. And the only problem was the Wells Fargo lawsuit. Which is a pretty big problem, right? Yes, yes. It was a big problem for her. But, again. Let me stop you on that, too. Here's my problem. The solvency for purposes of this statute is assets minus liability. Yes. That's the definition. Yes. And there's another provision that says if you can't pay your debts, you're presumed to be insolvent. Exactly. Okay. You're saying that she could pay her debts. So she must be presumed to be solvent. Yes. I don't think the statute says that. The statute says if your assets are less than your liabilities, you're insolvent. And there's a shortcut to proving that by showing that the person is not paying the debts. But the ability to pay debts doesn't prove solvency. Okay, okay. And, again, as to the issue of whether the transfer was fraud, the basis of fraud, I mean, there's a lot of elements. I know the court decided every best, every factor that fraud was done. But I think in this case, you have to look at the totality of the circumstances. Because all these transactions that they're on, she was the owner of the property. It was coming a while. The transfers were not done to delay, to defraud, to intend a creditor. The mortgage was always paid. The mortgage was not in question. So there was questions of fact where fraud was there or not made in the evidence that we did in the declarations. So I believe that we can just ask this court to just see that there were questions of fact and reverse the judgment. You have three and a half minutes left for rebuttal. Why don't you reserve that, and we'll hear from the other side. Okay, sure. Thank you. Thank you. Very thick notebook. Yes. I'm going to be prepared. Please introduce yourself. Good morning. May it please the Court. Brandon Iskander, appearing. Brandon Iskander, Shulman, Hodges, and Bashin, appearing for Linda Bui, the Chapter 7 trustee. I wanted to make three points today. And first, that the appeal is constitutionally moot. Second, that the appeal is equitably moot. And to the extent that we need to get into the merits of the underlying appeal, there was no reversible error here. First is the constitutional mootness. You know, under Article 3, Section 2, there must be a case or controversy in order for a federal court to exercise jurisdiction. And so the test for that is whether there are adverse litigants in a dispute and whether there is a substantial likelihood that the decision will have an effect. You've sold the house, is what you're saying? Yes. Do you have the money? We do. Why can't we fashion a remedy from the money? Well, I would go to the equitable mootness idea then, and I would say that a chief concern on mootness is whether an innocent party is going to be harmed. And the innocent party here is the good-faith purchaser whose only act was One possibility of the relief that could be granted is not upset the sale, you know, leave that sale standing, but because the trustee still has the net proceeds, presumably after paying your sales expenses and probably the mortgage, there's some money left which has not been distributed. Maybe she could be given that money if she prevails on the merits. Well, then that would just prejudice the estate and its creditors. Which is not an innocent party, necessarily. I mean, that's a different question, right? Well, I mean, I don't know if we are here to decide whether or not the estate and its creditors. No, you raise the point of an innocent party. That would be the purchaser. It would not be the estate. It just doesn't matter to the – I mean, that's a different question. Well, the trustee is bound under Section 704 to marshal the assets of the estate. So the trustee – We're past that point. You've done it. The question is could we – could a remedy be formed? And we're asking why one couldn't be. We submit that that would harm an innocent party because the trustee was bound to undo the fraudulent transfer. The trustee was bound to incur administrative expenses. Wait a minute. Wait a minute. The equitable mootness cases don't look at what the trustee did. The equitable mootness cases look at what somebody who was not a prime actor in this matter did and whether they had relied on other actions and whether they were otherwise strangers to the process. And those are the folks who get protected. I'm not saying that the trustee wouldn't be unhappy and wouldn't, you know, on some level be aggrieved. But they're not – I mean, they don't fit into the innocent party analysis to me at all. And I also think it's somewhat circular because you're saying, you know, we did our job. We voided the fraudulent transfer. Well, the issue in this appeal is whether the fraudulent transfer should have been avoided in the first place. I agree the trustee is doing her job. That's not the issue. But I don't think that makes someone so innocent that you're insulated from any effects of a potentially wrong decision. So I guess I would go back to the test of where mortgage is limited because the actual two-prong test is whether a stay was sought and whether substantial consummation has occurred. So that's the equitable mootness test. So whether or not, you know, glossing over mortgage is limited, you could attach the proceeds and return them back on the merits of the underlying appeal. I don't think that addresses mortgage is limited. I think that's dispositive here. And the appellant did not seek a stay pending appeal after it was denied by the bankruptcy court. We're talking about equitable mootness here? Yes. Doesn't TransWest tell us that the fact that somebody didn't obtain a stay is, one, not fatal, and, two, substantial consummation is just a factor, and, three, if you can fashion effective relief, you could still find something not equitably moot? I mean, doesn't TransWest address that directly and say standards are a little different than you're telling me? We would still rely on mortgage is limited. I'm sure that that is the case, but I think mortgage is limited is dispositive here. And so a stay wasn't sought. In fact, there were two opportunities to seek a stay. There was the appeal of the fraudulent transfer action, and then it was possible for this appeal to address whether or not Ms. Perez could get the property back up until 14 days after October 10th when the sale order was entered. Ms. Perez could have then appealed the sale. She didn't do that. She didn't seek a stay pending appeal of the sale. And so that is significant, and I think she's been given a lot of opportunities to exercise her rights. She has literally said to the bankruptcy court, if a stay pending appeal is not granted, then I will never have my issues heard. I will never get the property back. So she had the opportunity. She didn't do it. And under mortgage is limited, I think that's dispositive. I also question whether we're properly here because, as I mentioned, the sale order is the order to appeal at this point. The fraudulent transfer action was whether or not the trustee was entitled to use, sell, or lease the property, and that's already been done. So the proper thing to do at that point was to question the sale. And so when the appellant says, well, there wasn't good faith, and we need to look at this case called Estelore, I think that's inappropriate because I think that is a collateral attack on the sale order, which was not appealed, and that attack is now time barred. I would also note that Estelore was about a motion for reconsideration of a compromise dismissing claims, and it was distinguished from a sale order in a case called Ideli, which was a sale of claims. Here we're not discussing whether or not the sale was appropriate. We're discussing on its face whether or not the fraudulent transfer action was appropriately decided. So I think that's not – I don't think we're properly here on that matter, and I would point the Court to the actual language of 363M, which says, the reversal or modification on appeal of an authorization under subsection B does not affect the validity. So we're not here on the question of whether the authorization under 363B was appropriate. We're here on whether the fraudulent transfer action was appropriately decided. And so I think that when we go back to constitutional newness, the question is, can this Court do something with respect to the fraudulent transfer action that makes a difference? And I guess perhaps there could be some kind of attachment, but I think we're not here on whether or not the sale was appropriate. We're here on whether the fraudulent transfer was appropriately decided. Can I move you on to the merits? And this is an unusual case where we have a summary judgment on an actual intentional fraudulent transfer claim. I mean, normally a summary judgment on a question of intent is improper. Why was it okay in this case? Because we had substantial, overwhelming evidence in the record of fraudulent intent. And we look at Beverly, where there was equally substantial, circumstantial evidence of fraudulent intent. The Court found that there were seven badges of fraud present. And I would just point the Court back to Beverly, where it says that this ‑‑ That's a very slippery slope here. You're saying that the judge weighed the evidence and decided the case. Probably not a good place to go. Maybe the better response is that we established a prima facie case, sufficient evidence to prevail, and the evidence offered to create issues of fact was insufficient as a matter of law. Yes, Your Honor. Thank you for clarifying that. Tell me why that's true. I'm not saying it's true. You tell me why it's true. Well, we pointed to all of the reasons why a prima facie case was set. And so then the burden shifted to the non‑moving party to show that there was either some supervening purpose or that there was a genuine issue of material fact. And the five issues that were raised were neither genuine nor material. The first one was when the transfer was made. And this Court clearly said in In re Erring that the transfer is made when it is perfected under state law. So that was in 2014, which was within the two‑year reach‑back period. So that's not a genuine issue. It's an issue of law. No fact finder could find in favor of any party on an issue of law. Second, the question of whether the debtor retained a beneficial interest in the property. Well, the dispute is, oh, well, the debtor and somebody else retained an interest. Well, that doesn't change the question of whether the debtor retained an interest. So that's not a genuine dispute either. Then there's the evidentiary dispute about the realtor's opinion. And that's why I wanted to point the Court back to Matsushita v. Zenith, because it's not enough to say, oh, there's some metaphysical doubt about the value of the property, and, you know, let's go to trial on that. The ‑‑ and I have the language here. It says, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. And that wasn't done. It was just an objection interposed into the record, and the Court considered it and denied it. And then the question is whether that was beyond the pale. And certainly that wasn't the case. Then there was a question of whether there was a debt existing at the time of the transfer or at or around the time of the transfer, and whether there was pre-petition litigation. And the dispute there is, oh, well, the automatic stay was in effect, and Wells Fargo didn't violate the automatic stay, so therefore no debt existed. And that is not a genuine issue either. Was there any evidence of when the Wells Fargo lawsuit was started? I didn't find any. I don't have that in front of me, but what I do have, and I scoured this record, is the idea that the creditor was in existence, that she was consolidating her loan debt, and that she intended to default in order to take care of her mother. So she must have known that the litigation was coming. One problem I have with this record is that pretty much all the data about solvency and insolvency was taken from the petition. But these transfers took place almost two years before, and it's not necessarily true that your financial condition is the same two years apart. Now, maybe there was an objection raised at the bankruptcy court on that point, but it did kind of trouble me that we were measuring solvency potentially at the wrong date. Well, I would point the court to my opposing counsel's own arguments. This was a low-income person who was only barely able to pay her debts as they came due unless she hit the lottery. I don't see that there's a lot of evidence that shows that the court was not appropriate. Well, let's think about that. I mean, on summary judgment, when there is sufficient evidence put forward, you have to come forward with evidence to create a material issue of fact. But if there is insufficient evidence presented, in other words, insufficient evidence is insolvency because there's a time lapse between the two events, that can be handled just simply by a denial, saying you can argue to the court that evidence is insufficient. Was that done? No, that wasn't done. There was no dispute as to the schedules and whether the schedules were accurate. Well, shouldn't the judge have just figured that out for herself? I mean, the evidence is insufficient on summary judgment. I don't grant summary judgment. Even if someone hasn't raised that issue as articulately as they should have. But here the question is whether that finding was clearly erroneous. And so you have to look at whether it was illogical or whether it was implausible based on the record. Or not based on something in the record, and that's exactly the point. And summary judgment is de novo, not clearly erroneous. Well, before I go, I just want to point the court to the excerpts of the record, which shows that she had a credit card debt. She was consolidating them, and that was around the time of the transfer. And that would be the appellee's excerpts of the record at 243 through 246. She says that in 2014 that was the time that she began to have, and then she stopped herself and she said, I began to consolidate the Wells Fargo debt. Can we revisit the mootness issue here? I'm intrigued by your discussion with Judge Lafferty. I think the rule in the Ninth Circuit still is that if you don't ask for a stay, that even under Trans-West you might be sold out of licorice on your appeal as to that appeal. Now, that may render any appeal of the sales order moot, right? You didn't ask for a stay, it got sold, you can't undo the sale. But what about the fraudulent conveyance issue? How does that render that moot? Maybe I'm not understanding the question. You're saying there's no appeal of the sales order, right? Correct. She was given multiple opportunities to have this court fashion a direct remedy, and she did not do so. And she even admitted to the court below what would happen if no stay was entered, and she then failed to seek a stay here. So I think that is dispositive. If the court has no further questions, I'll submit. Thank you very much. Thank you. Counsel, three and a half minutes. Thank you. I think there is questions of fact, the fraudulent transfer, and I think we made our arguments in our appeal that even though the house was sold, that this court can fashion some type of remedy and make the appeal not moot. So on that, I'll just submit. Thank you very much. Thank you. Please call the next case. This matter, by the way, is deemed submitted and we'll issue an opinion promptly. Thank you very much.
judges: Kurtz, Faris and Lafferty